**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:24-cv-60656-LEIBOWITZ**

**FANATICS, LLC**,

     *Plaintiff*,

*v.*

**FANATICCHEAPS.COM, AN**
**INDIVIDUAL, BUSINESS ENTITY, OR**
**UNINCORPORATED ASSOCIATION,**

     *Defendant*.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT

**THIS CAUSE** comes before the Court on Plaintiff's Motion for Entry of Default Final Judgment against Defendant (the "Motion") [ECF No. 18], filed on September 26, 2024.

By the instant Motion, Plaintiff, Fanatics, LLC ("Plaintiff") seeks entry of a default final judgment against Defendant, fanaticcheaps.com, an Individual, Business Entity, or Unincorporated Association, also identified on Schedule "A" hereto ("Defendant"), which operates the Internet based e-commerce store that infringes Plaintiff's trademarks and promotes and sells goods using counterfeits of Plaintiff's trademarks.  [*See generally* Mot.].  Plaintiff requests the Court: (1) enjoin Defendant from producing or selling goods that infringe on its trademarks; (2) cancel, or at Plaintiff's election, transfer the domain name to Plaintiff; (3) assign all rights, title, and interest to the domain name to Plaintiff; (4) permanently delist or deindex the domain name from internet search engines; and (5) award statutory damages.  [*See generally id.*].

A Clerk's Default [ECF No. 17] was entered against Defendant on August 16, 2024, after Defendant failed to respond to the Amended Complaint [ECF No. 8], despite having been served.

[*See* Aff. of Service, ECF No. 15].  The Court has carefully considered the Motion, the record, and applicable law, and finds default judgment against Defendant is proper.

## I.   **BACKGROUND**[1]

### A.   **Factual Background**

Plaintiff is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Fanatics Marks"):

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| FOOTBALL FANATICS | 2,538,045 | February 12, 2002 | IC 035 - Retail Store Services and On-Line Retail Store Services Featuring Sports Related and Sports Team Branded Clothing, Namely, Shirts, Sweatshirts, Jerseys, Jackets, Shoes and Hats; and Retail Store Services and On-Line Retail Store Services Featuring Sports Related and Sports Team Branded Merchandise, Namely, Flags, Football Helmets, License Plate Holders, Imitation License Plates, Watches, Clocks and Jewelry |
| FANATICS | 3,447,091 | June 10, 2008 | IC 035 - Retail Store Services and On-Line Retail Store Services Featuring Sports Related and Sports Team Branded Clothing, Namely, Shirts, Sweatshirts, Jerseys, Jackets, Shorts and Hats; and Retail Store Services and On-Line Retail Stores Services Featuring Sports Related and Sports Team Branded |

---

[1]     The factual background is taken from Plaintiff's Amended Complaint [ECF No. 8], Plaintiff's Amended Motion for Order Authorizing Alternative Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3) [ECF No. 10], Plaintiff's Motion for Entry of Default Final Judgment [ECF No. 18], and supporting Declarations submitted by Plaintiff.

| | | | |
|---|---|---|---|
| | | | Merchandise, Namely, Flags, Football Helmets, License Plate Holders, Imitation License Plates, Watches, Clocks And Jewelry; Product Merchandising, Namely, Purchasing and Maintaining Inventory of Products, Namely, Clothing, for Others; Order Fulfillment Services; Business Marketing Consulting Services, Namely, Providing Business Advice to Others in Developing Online Retail Sites and Direct Marketing Response Businesses; Customer Services in the Field of Retail Store Services |
| FANCASH | 3,501,154 | September 16, 2008 | IC 035 – Conducting an Incentive Rewards Program to Promote the Sale of Sports Related Clothing and Merchandise by Giving Credit to be Used in Various Retail Stores and Online Retail Stores |
| SURF FANATICS | 3,607,516 | April 14, 2009 | IC 035 - On-Line Retail Store Services Featuring Sunglasses, Wallets, Backpacks, Tote Bags, Shirts, T-Shirts, Tank Tops, Sweatshirts, Jackets, Shorts, Pants, Jeans, Hats, Footwear, Shoes, Sandals, Rash Guards, Swimwear, Surf Wear |
| FOOTBALL FANATICS | 3,891,734 | December 21, 2010 | IC 035 - Customer Service in the Field of Retail Store Services and On-Line Retail Store Services; On-Line Retail Store Services Featuring Sports Related and Sports Team Branded Clothing and Merchandise; Order Fulfillment Services; Product Merchandising; Retail Store Services Featuring Sports Related and Sports Team |

| | | | |
|---|---|---|---|
| | | | Branded Clothing and Merchandise |
| FANATICS | 3,891,735 | December 21, 2010 | IC 035 - Business Marketing Consulting Services; Customer Service in the Field of On-Line Retail Store Services; On-Line Retail Store Services Featuring Sports Related and Sports Team Branded Clothing and Merchandise; Product Merchandising; Retail Store Services Featuring Sports Related and Sports Team Branded Clothing and Merchandise |
| FANSEDGE | 4,820,780 | September 29, 2015 | IC 035 - Online Retail Store Services, Featuring Clothing, Sporting Goods, Videos, Printed Sports Publications, Sports Memorabilia and Related Goods; Online Retail Store Services Featuring Sports Related and Sports Team Branded Clothing and Merchandise; Order Fulfillment Services; Customer Service, Namely, Responding to Customers Inquiries for Others in the Field of Sports Related and Sports Team Branded Clothing and Merchandise |
|  | 5,188,153 | April 18, 2017 | IC 040 - Custom Manufacturing of Clothing and Apparel<br>IC 025 - Clothing, Namely, Jackets, Jerseys, Sweatshirts, Shirts, Pants, Headwear; Hats |
|  | 5,188,158 | April 18, 2017 | IC 040 - Custom Manufacturing of Clothing and Apparel<br>IC 025 - Clothing, Namely, Sweatshirts, Jackets, Jerseys, Shirts, Pants; Headwear; Hats |
|  | 5,210,047 | May 23, 2017 | IC 035 - On-Line Retail Store Services and Retail Store Services Featuring Clothing, Sporting Goods, Bedding, Videos, Printed Sports |

| | | | |
|---|---|---|---|
| | | | Publications, Sports Memorabilia, Sports Related and Sports Team Branded Clothing and Merchandise; Business Marketing Consulting Services; Customer Services, Namely, Responding to Customers Inquiries for Others in the Field of Sports Related and Sports Team Branded Clothing and Merchandise; Product Merchandising; Order Fulfillment Services; Retail Store Services, Namely, Business Management and Operation of Retail Stores for Others; Conducting, Arranging, and Organizing Sports Memorabilia Shows for Commercial Purposes<br>IC 042 - Development of New Technology for Others in the Field of Retail Store Services for the Purpose of Creating and Maintaining the Look and Feel ff Web Sites for Others; Computer Services, Namely, Creating, Designing, Implementing, Managing, and Maintaining the Look and Feel of Web Sites for Others |
| FANATICS | 5,210,048 | May 23, 2017 | IC 035 - Retail Store Services, Namely, Business Management and Operation of Retail Stores for Others; Conducting, Arranging, and Organizing Sports Memorabilia Shows for Commercial Purposes |
| FANATICS | 5,210,705 | May 23, 2017 | IC 040 - Custom Manufacturing of Clothing and Apparel |
| Fanatics | 5,261,667 | August 8, 2017 | IC 035 - On-Line Retail Store Services and Retail Store Services Featuring Clothing, Sporting Goods, Bedding, Videos, Printed Sports Publications, Sports |

| | | | |
|---|---|---|---|
| | | | Memorabilia, Sports Related and Sports Team Branded Clothing and Merchandise; Business Marketing Consulting Services; Customer Services, Namely, Responding to Customers Inquiries for Others in the Field of Sports Related and Sports Team Branded Clothing and Merchandise; Product Merchandising; Order Fulfillment Services; Retail Store Services, Namely, Business Management and Operation of Retail Stores for Others; Conducting, Arranging, and Organizing Sports Memorabilia Shows for Commercial Purposes<br> IC 042 - Development of New Technology for Others in the Field of Retail Store Services for the Purpose of Creating and Maintaining the Look and Feel of Web Sites for Others; Computer Services, Namely, Creating, Designing, Implementing, Managing, and Maintaining the Look and Feel of Web Sites for Others |
| FANATICS | 5,285,287 | September 12, 2017 | IC 025 - Clothing, Namely, Jackets, Jerseys, Sweatshirts, Shirts, Pants; Headwear; Hats |
| FANS EDGE | 5,360,652 | December 19, 2017 | IC 035 - On-line Retail Store Services and Retail Store Services Featuring Clothing, Sporting Goods, Bedding, Videos, Printed Sports Publications, Sports Memorabilia, Sports Related and Sports Team Branded Clothing and Merchandise, and Related Goods; Customer Services, Namely, Responding to Customers Inquiries for Others in the Field of Sports |

| | | | |
|---|---|---|---|
| | | | Related and Sports Team Branded Clothing and Merchandise; Product Merchandising; Order Fulfillment Services |
| FANATICS REWARDS | 5,573,797 | October 2, 2018 | IC 035 - Conducting Incentive Award Programs to Promote the Sale of Clothing, Sporting Goods, Bedding, Videos, Printed Sports Publications, Sports Memorabilia, Sports Related and Sports Team Branded Clothing and Merchandise; On-Line Retail Store Services and Retail Store Services in the Field of Clothing, Sporting Goods, Bedding, Videos, Printed Sports Publications, Sports Memorabilia, Sports Related and Sports Team Branded Clothing and Merchandise, Featuring a Bonus Incentive Program for Customers |
| FANATICS | 5,597,643 | October 30, 2018 | IC 025 - Clothing, Namely, Sweaters, Shorts; Scarves |
|  Fanatics | 5,607,480 | November 13, 2018 | IC 025 - Clothing, Namely, Sweaters, Shorts; Scarves. |
|  | 5,623,137 | December 4, 2018 | IC 025 - Clothing, Namely, Sweaters, Shorts; Scarves |
|  | 5,666,719 | January 29, 2019 | IC 035 - Arranging and Conducting Incentive Reward Programs to Promote the Sale of Sports Merchandise and Apparel Featuring a Program Offering Customers a Replacement, Refund, Discount on Future Purchases, and/or Other Benefits in the Event that a Consumer No Longer Wants to Retain Ownership of Previously Purchased Item of Sports Merchandise or Sports Apparel; Providing Incentive Award Programs for Customers |

| | | | |
|---|---|---|---|
| | | | in the Nature of a Program Offering Customers a Replacement, Refund, Discount on Future Purchases, and/or Other Benefits in the Event that a Consumer No Longer Wants to Retain Ownership of Previously Purchased Item of Sports Merchandise or Sports Apparel; Administration of a Customer Loyalty Program for Sports Merchandise and Sports Apparel which Provides a Replacement, Refund, Discount on Future Purchases, and/or Other Benefits in the Event that a Consumer No Longer Wants to Retain Ownership of a Previously Purchased Item of Sports Merchandise or Sports Apparel; Consumer Loyalty Services for Commercial, Promotional, and/or Advertising Purposes, Namely, Administration of a Program Offering Customers a Replacement, Refund, Discount on Future Purchases, and/or Other Benefits in the Event that a Consumer No Longer Wants to Retain Ownership of Previously Purchased Item of Sports Merchandise or Sports Apparel |
| FANATICS | 5,666,720 | January 29, 2019 | IC 035 - Arranging and Conducting Incentive Reward Programs to Promote the Sale of Sports Merchandise and Apparel Featuring a Program Offering Customers a Replacement, Refund, Discount on Future Purchases, and/or Other Benefits in the Event That a Consumer No Longer Wants to Retain Ownership of Previously Purchased Item of |

| | | | Sports Merchandise or Sports Apparel; Providing Incentive Award Programs for Customers in the Nature of a Program Offering Customers a Replacement, Refund, Discount on Future Purchases, and/or Other Benefits in the Event that a Consumer No Longer Wants to Retain Ownership of Previously Purchased Item of Sports Merchandise or Sports Apparel; Administration of a Customer Loyalty Program for Sports Merchandise and Sports Apparel which Provides a Replacement, Refund, Discount on Future Purchases, and/or Other Benefits in the Event that a Consumer No Longer Wants to Retain Ownership of a Previously Purchased Item of Sports Merchandise or Sports Apparel; Consumer Loyalty Services for Commercial, Promotional, and/or Advertising Purposes, Namely, Administration of a Program Offering Customers a Replacement, Refund, Discount on Future Purchases, and/or Other Benefits in the Event that a Consumer No Longer Wants to Retain Ownership of Previously Purchased Item of Sports Merchandise or Sports Apparel |
|---|---|---|---|
| FAST BREAK | 5,670,878 | February 5, 2019 | IC 025 - Sports jerseys |
| Fanatics | 5,740,035 | April 30, 2019 | IC 025 - Footwear |
| Fanatics | 5,745,801 | May 7, 2019 | IC 028 - Baseballs; Footballs; Soccer Balls; Basketballs; Hockey Pucks; Baseball Bats IC 016 - Pictures; Framed Pictures |

| | | | |
|---|---|---|---|
| | | | IC 020 - Photograph Frames; Collectible Items, Namely, Baseballs, Footballs, Soccer Balls, Basketballs, Hockey Pucks, Cleats, Shoes, Baseball Bats, Jerseys, Hats, Caps, Helmets, Flags, Magazines, Trading Cards, Pictures<br>IC 024 - Nylon Flags |
|  | 5,745,802 | May 7, 2019 | IC 016 - Framed Pictures<br>IC 020 - Hats, Caps<br>IC 028 - Hockey Pucks |
| FANATICS | 5,745,803 | May 7, 2019 | IC 016 - Pictures; Framed Pictures<br>IC 020 - Photograph Frames; Collectible Items, Namely, Baseballs, Footballs, Soccer Balls, Basketballs, Hockey Pucks, Cleats, Shoes, Baseball Bats, Jerseys, Hats, Caps, Helmets, Flags, Magazines, Trading Cards, Pictures<br>IC 024 - Nylon Flags<br>IC 028 - Baseballs; Footballs; Soccer Balls; Basketballs; Hockey Pucks; Baseball Bats |
|  | 5,763,755 | May 28, 2019 | IC 025 - Footwear |
| FANATICS | 5,868,815 | September 24, 2019 | IC 025 - Footwear |
| FANSEDGE | 5,915,071 | November 19, 2019 | IC 018 - Luggage; All Purpose Carrying Bags; Sport Bags |
| FANS EDGE | 5,955,763 | January 7, 2020 | IC 009 - Mouse Pads<br>IC 018 - Luggage; All Purpose Carrying Bags; Sport Bags<br>IC 025 - Clothing, Namely, Jackets, Sweatshirts, Shirts; Headwear; Hats |
| JERSEY ASSURANCE | 5,993,559 | February 25, 2020 | IC 035 - Arranging and Conducting Incentive Reward Programs to Promote the Sale of Sports Merchandise and Apparel Featuring a Program Offering Customers a Replacement, Refund, Discount |

| | | | |
|---|---|---|---|
| | | | on Future Purchases, and/or Other Benefits in the Event that a Consumer No Longer Wants to Retain Ownership of Previously Purchased Item of Sports Merchandise or Sports Apparel; Providing Incentive Award Programs for Customers in the Nature of a Program Offering Customers a Replacement, Refund, Discount on Future Purchases, and/or Other Benefits in the Event that a Consumer No Longer Wants to Retain Ownership of Previously Purchased Item of Sports Merchandise or Sports Apparel; Administration of a Customer Loyalty Program for Sports Merchandise And Sports Apparel which Provides a Replacement, Refund, Discount on Future Purchases, and/or Other Benefits in the Event that a Consumer No Longer Wants to Retain Ownership of a Previously Purchased Item of Sports Merchandise or Sports Apparel; Consumer Loyalty Services for Commercial, Promotional, and/or Advertising Purposes, Namely, Administration of a Program Offering Customers a Replacement, Refund, Discount on Future Purchases, and/or Other Benefits in the Event that a Consumer No Longer Wants to Retain Ownership of Previously Purchased Item of Sports Merchandise or Sports Apparel |
| CRAFTED FOR FANS | 6,002,873 | March 3, 2020 | IC 025 - Clothing, Namely, Jackets, Jerseys, Sweatshirts, Shirts, Pants, Shorts; Headwear; Hats; Scarves |

| | | | |
|---|---|---|---|
| FANSEDGE | 6,048,529 | May 5, 2020 | IC 025 - Clothing and Apparel, Namely, T-Shirts, Jackets, Tops, Sweatshirts; Headwear and Hats |
| OFFICIALLY LICENSED EVERYTHING | 6,094,632 | July 7, 2020 | IC 035 - On-Line Retail Store Services Featuring Clothing, Sporting Goods, Bedding, Printed Sports Publications, Sports Memorabilia, Sports Related and Sports Team Branded Clothing and Merchandise |

[*See* Decl. of Jim Aronowitz in Supp. of the Pl.'s Motion ("Aronowitz Decl.") ECF No. 18-1 ¶ 4; *see also* United States Trademark Registrations of the Fanatics Marks at issue attached as Composite Exhibit 2 to the Amended Complaint ECF No. 8-2]. The Fanatics Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. [*See* Aronowitz Decl., ECF No. 18-1 ¶¶ 4].

Defendant, through the Internet website operating under the domain name identified on Schedule "A" hereto (the "Subject Domain Name"), has advertised, promoted, offered for sale, or sold goods using what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Fanatics Marks. [*See* Aronowitz Decl., ECF No. 18-1, ¶¶ 9–11; Decl. of Stephen M. Gaffigan in Supp. of the Pl.'s Amended Mot. for Order Authorizing Alternate Service of Process ("Gaffigan Decl."), ECF No. 10-1, ¶ 2]. Although Defendant may not copy and infringe each Fanatics Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing that Defendant has infringed, at least, one or more of the Fanatics Marks. [*See* Aronowitz Decl. ¶¶ 4, 9–11]. Defendant is not now, nor has it ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Fanatics Marks. [*See id.*].

Plaintiff's representative, Jim Aronowitz, reviewed and visually inspected Defendant's website, including web page captures capture and download by Plaintiff's counsel's firm reflecting the website's use of the Fanatics Marks in connection with the various products and/or services offered for sale by Defendant via the Subject Domain Name, and determined the website was not affiliated with or approved by Plaintiff.  [*See* Aronowitz Decl. ¶¶ 9–11; Gaffigan Decl. ¶ 2].

### B.      Procedural Background

On April 22, 2024, Plaintiff filed its Complaint [ECF No. 1] and thereafter its Amended Complaint on July 19, 2024 [ECF No. 8] against Defendant for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement.  On July 19, 2024, Plaintiff moved for an Order Authorizing Alternative Service[2] [ECF No. 10], which the Court granted on July 22, 2024 [ECF No. 11].  In accordance with the July 22, 2024, Order Authorizing Alternative Service, Plaintiff served Defendant with a Summons and a copy of the Amended Complaint via electronic mail and via website posting on July 23, 2024.  [*See* Decl. of Stephen M. Gaffigan in Supp. of the Pl.'s Mot. ("Gaffigan Decl. in Supp. of Mot."), ECF No. 18-3] ¶ 4; *see also* Aff. of Service, ECF No. 15].

Defendant failed to file an answer or other response, and the time allowed for Defendant to respond to the Amended Complaint has expired.  [*See* Gaffigan Decl. in Supp.of Mot., ECF No. 18-3 ¶¶ 5–6].  To Plaintiff's knowledge, Defendant is not an infant or incompetent person, and the Servicemembers Civil Relief Act does not apply.  [*See id.* ¶ 7].  On August 16, 2024, Plaintiff moved for a Clerk's Entry of Default.  [ECF No. 16].  A Clerk's Default was entered against Defendant on August 16, 2024 [ECF No. 17] for failure to appear, plead, or otherwise defend pursuant to Rule

---

[2]      Plaintiff amended its Motion for Order Authorizing Alternate Service of Process filed at ECF No. 5 to limit its requested relief to the single Defendant at issue.

55(a) of the Federal Rules of Civil Procedure.  Plaintiff now moves the Court to grant default final judgment against Defendant.

## II.   <u>LEGAL STANDARD</u>

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court is authorized to enter a final judgment of default against a party who has failed to respond to a complaint.  *See* Fed. R. Civ. P. 55(b)(2).  The entry of default constitutes an admission by a defendant of the well-pleaded allegations in the complaint.  *See Cancienne v. Drain Master of S. Fla., Inc.*, No. 08-cv-61123, 2008 WL 5111264, at *1 (S.D. Fla. Dec. 3, 2008) (citing *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277–78 (11th Cir. 2005)).  However, a defendant's default "does not in itself warrant . . . entering a default judgment."  *Goldman v. HSBC Bank USA, Nat'l Ass'n*, No. 13-cv-81271, 2015 WL 1782241, at *1 (S.D. Fla Mar. 24, 2015) (alteration in original; internal quotation marks omitted) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Because a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered.  *See id.*; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default[.]").

Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages.  *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004).  Although an evidentiary hearing is generally required, the Court need not conduct such a hearing "when . . . additional evidence would be truly unnecessary to a fully informed determination of damages."  *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017) (quoting *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)). Therefore, where the record adequately supports the award of damages, an evidentiary hearing is not

required.  *See Smyth,* 420 F.3d at 1232 n.13; *PetMed*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (finding an evidentiary hearing unnecessary because plaintiff was seeking statutory damages under the Lanham Act).

## III.   DISCUSSION

### A.   Claims

Plaintiff seeks default judgment against Defendant on the claims asserted in the Amended Complaint: (1) trademark counterfeiting and infringement under section 32 of the Lanham Act, in violation of 15 U.S.C. section 1114 (Count I); (2) false designation of origin under section 43(a) of the Lanham Act, in violation of 15 U.S.C. section 1125(a) (Count II); (3) cybersquatting under section 43(d) of the Lanham Act, in violation of 15 U.S.C. section 1125(d) (Count III); (4) unfair competition under Florida common law (Count IV); and (5) trademark infringement under Florida common law (Count V).  [*See* Am. Compl. ¶¶ 45–80].

### 1.   Counterfeiting and Infringement

Section 32 of the Lanham Act, 15 U.S.C. section 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a).  To prevail on a trademark infringement claim, a plaintiff must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."  *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (footnote call number and citation omitted).

### 2.      False Designation of Origin

The test for liability for false designation of origin under 15 U.S.C. section 1125(a) is the same as for a trademark counterfeiting and infringement claim—*i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992) (Stevens, J., concurring).

### 3.      Cybersquatting

The Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name that is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See* 15 U.S.C. § 1125(d). To prevail under 15 U.S.C. § 1125(d), a plaintiff must demonstrate that "(l) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006); *see* 15 U.S.C. § 1125(d).

### 4.      Common Law Unfair Competition

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-cv-8381, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1986) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983).").

### 5.   Common Law Trademark Infringement

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under section 32(a) of the Lanham Act.  *See PetMed*, 336 F. Supp. 2d at 1217–18.

### B.   Liability

The well-pleaded factual allegations of Plaintiff's Amended Complaint properly contain the elements for each of the above claims.  [*See generally* Am. Compl.].  Plaintiff establishes it had prior rights to the marks at issue.  [*See* Am. Compl. ¶ 18].  Plaintiff also alleges Defendant "is actively using, promoting and otherwise advertising, distributing, offering for sale, and/or selling substantial quantities of its goods and/or services with the knowledge and intent that such goods and/or services will be mistaken for the genuine high-quality goods and/or services offered for sale by Fanatics."  [*Id.* ¶ 29].  Further, Plaintiff alleges "Defendant's . . . infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers[.]"  [*Id.* ¶ 35 (alterations added)].

Because the allegations in the Amended Complaint are deemed admitted by virtue of Defendant's failure to answer or respond, default judgment under Rule 55 of the Federal Rules of Civil Procedure is appropriately entered against them.

### C.   Relief

Plaintiff requests an award of equitable relief and monetary damages against Defendant for trademark infringement in Count I and cybersquatting in Count II.  The Court analyzes Plaintiff's request for relief as to Count I and Count II only, as judgment for Count III, IV, and V—false designation of origin, common law unfair competition, and common law trademark infringement—is limited to entry of the requested equitable relief under Count I.  [*See generally* Mot.].

*Injunctive Relief.*  Under the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law.  15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (alteration in original; quotation marks omitted; quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)).  Injunctive relief is available even in the default judgment setting, *see, e.g.*, *PetMed*, 336 F. Supp. 2d at 1222–23, since a defendant's failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction.  *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.") (alteration added)).

Permanent injunctive relief is appropriate when a plaintiff demonstrates:  (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest.  *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted).  Plaintiff has carried its burden on each of the four factors.

Specifically, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm."  *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985) (alterations added; footnote call number omitted); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of

thousands of pairs of counterfeit jeans would damage [the plaintiff's] business reputation and decrease its legitimate sales." (alteration added)).   Plaintiff's Amended Complaint and the submissions show the goods produced, offered for sale, and/or sold by Defendant via its website use identical copies of Plaintiff's trademarks, and consumers viewing Defendant's website and goods are likely to confuse them for Plaintiff's genuine products.   [*See, e.g.*, Am. Compl. ¶ 29 ("Defendant's actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe Defendant's goods and/or services offered through Defendant's e-commerce store website are genuine goods and/or services originating from, associated with, and/or approved by Fanatics")].

Plaintiff has no adequate remedy at law so long as Defendant continues to operate the Subject Domain Name because Plaintiff cannot control how its trademarks are presented to consumers in the marketplace.   An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill if Defendant's infringing and counterfeiting actions can continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace.   By contrast, Defendant faces no hardship if it is prohibited from the infringement of Plaintiff's trademarks.   Finally, the public interest supports the issuance of a permanent injunction against Defendant to prevent consumers from being misled as to the quality and source of the products being offered for sale using Plaintiff's trademarks.   *See Chanel, Inc. v. besumart.com,* 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration added; citation omitted)); *see also World Wrestling Ent., Inc. v. Thomas*, No. 12-cv-21018, 2012 WL 12874190, at *8 (S.D. Fla. Apr. 11, 2012) (considering the potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing public's interest in an injunction).   The Court's broad equity

powers allow it to fashion injunctive relief necessary to stop Defendant's infringing activities.  *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendant has created an Internet-based counterfeiting scheme in which it is profiting from its deliberate misappropriation of Plaintiff's rights.  Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendant is conducting its unlawful activities by ordering the cancellation, or at Plaintiff's election, transfer of the domain name at issue to Plaintiff, assignment of all rights, title, and interest to the domain name to Plaintiff, and permanent delisting or deindexing of the domain name from all search engines, such that these means may no longer be used as instrumentalities to further the sale of goods using counterfeits of Plaintiff's trademarks.

*Statutory Damages*.  In a case involving the use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods, 15 U.S.C. section 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good.  *See* 15 U.S.C. § 1117(c)(1).  In addition, if the Court finds Defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per counterfeit mark per type of good.  *See* 15 U.S.C. § 1117(c)(2).

The Court has wide discretion to determine the amount of statutory damages.  *See PetMed*, 336 F. Supp. 2d at 1219 (citations omitted).  An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement.  *See Under Armour, Inc. v. 51nfljersey.com*, No. 13-cv-62809, 2014 WL 1652044, at *22–23 (S.D. Fla. Apr. 23, 2014) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.") (alteration added; citations omitted)); *Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*, No. 96-cv-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits).  The option of a statutory damages remedy in trademark counterfeiting cases is sensible given evidence of a defendant's profits in such cases is frequently almost impossible to ascertain.  *See, e.g.,* S. Rep. No. 104-177, pt. V § 7, at 10 (1995) (discussing purposes of Lanham Act statutory damages); *PetMed*, 336 F. Supp. 2d at 1220 (recognizing that statutory damages are "[e]specially appropriate in default judgment cases due to infringer nondisclosure" (alteration added; citations omitted)).

This case is no exception.  The allegations of the Amended Complaint and the evidence establish Defendant intentionally copied one or more of the Fanatics Marks for the purpose of deriving the benefit of Plaintiff's well-known reputation.  Defendant has defaulted on Plaintiff's allegations of willfulness.  [*See* Am. Compl. ¶¶ 27, 34]; *see also Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (concluding that a court may infer willfulness from the defendants' default); *PetMed*, 336 F. Supp. 2d at 1217 (stating that upon default, well-pleaded allegations are taken as true).  As such, the Lanham Act permits the Court to

award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure Defendant does not continue its intentional and willful counterfeiting activities.

The only available evidence demonstrates Defendant promoted, distributed, advertised, offered for sale and/or sold at least one type of good using marks which were counterfeits of at least one of the Fanatics Marks protected by federal trademark registrations.  [*See* Am. Compl. ¶¶ 15, 46–50; Aronowitz Decl. ¶¶ 4–5, 9–11, 16; *see also* Aronowitz Decl. Ex. 1, Statutory Damages Calculation Chart, ECF No. 18-2].  Based on the above considerations, Plaintiff suggests the Court award statutory damages by starting with a baseline of thirty thousand dollars ($30,000.00), trebled to reflect Defendant's willfulness, and doubled for the purpose of deterrence, resulting in one hundred eighty thousand dollars ($180,000.00) per trademark counterfeited per type of good offered for sale and/or sold by Defendant. [*See* Mot. at 15–16; Aronowitz Decl. ¶¶ 16, 18; Statutory Damages Calculation Chart].

The award should be sufficient to deter Defendant and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendant, all stated goals of 15 U.S.C. section 1117(c).  The Court finds this award of statutory damages falls within the permissible range under 15 U.S.C. section 1117(c) and is just.  *See Chanel, Inc. v. Individuals,* No. 24-cv-22336, 2024 U.S. Dist. LEXIS 145638 (S.D. Fla. Aug. 15, 2024) (entry of statutory damages award using a baseline of $30,000.00, trebled to reflect willfulness and doubled for the purpose of deterrence, resulting in $180,000.00 per trademark counterfeited per type of good offered for sale and/or sold).

Plaintiff's Amended Complaint also sets forth a cause of action for cybersquatting pursuant to 15 U.S.C. section 1125(d).  As admitted by default, and established by the evidence submitted, Defendant has acted with the bad-faith intent to profit from at least one of the Fanatics Marks and

the goodwill associated with the Fanatics Marks by registering its Subject Domain Name, which is identical, confusingly similar to, or dilutive of at least one of the Fanatics Marks ("Cybersquatted Subject Domain Name"). [*See* Am. Compl. ¶¶ 36–41, 61–67; *see also* Mot. at 18]. The Cybersquatted Subject Domain Name incorporates at least one of Plaintiff's trademarks in its entirety surrounded by a descriptive or generic term, rendering the domain name nearly identical to at least one of Plaintiff's trademarks.

Upon a finding of liability, the ACPA authorizes the court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." *See* 15 U.S.C. § 1125(d)(1)(C); *see also Victoria's Cyber Secret Ltd. P'ship v. Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1356 (S.D. Fla. Sept. 10, 2001). Accordingly, Plaintiff is entitled to the transfer and ownership of the Cybersquatted Subject Domain Name because it is confusingly similar to at least one of Plaintiff's trademarks.

Additionally, in a case involving a violation of 15 U.S.C. section 1125(d)(1), a plaintiff may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the Court considers just. *See* 15 U.S.C. § 1117(d). Plaintiff has elected to recover an award of statutory damages as to Count III of the Complaint and requests an award in the amount of $10,000.00 in statutory damages pursuant to 15 U.S.C. § 1117(d) for the domain name violating the provisions of 15 U.S.C. section 1125(d)(1). [*See* Mot. at 20]. The Court finds this amount is just. *See Taverna Opa Trademark Corp. v. Ismail*, No. 08-cv-20776, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (awarding $10,000.00 in statutory damages for domain name at issue); *see also Tiffany (NJ) LLC v. Individuals, Bus. Entities & Unincorporated Ass'n Identified on Schedule "A"*, No. 23-cv-62371,

2023 U.S. Dist. LEXIS 29996 (S.D. Fla. Feb. 21, 2024) (awarding $10,000.00 in statutory damages for each infringing domain name at issue).

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Entry of Default Final Judgment [**ECF No. 18**] is **GRANTED**.  Default final judgment and a permanent injunction shall be entered by separate order.

**DONE AND ORDERED** in the Southern District of Florida on September 27, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:     counsel of record

**SCHEDULE "A"**
**DEFENDANT'S SUBJECT DOMAIN NAME**

| Defendant / Subject Domain Name |
| --- |
| fanaticcheaps.com |